# 99 DTA 192

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I - SAN JUAN**
**PANEL III**

JOSE ANDUJAR ROMAN
Recurrente

v.

JUNTA DE LIBERTAD BAJO PALABRA, LCDO. ENRIQUE GARCIA GARCIA
Recurrido

Núm. KLRA-99-00184

San Juan, Puerto Rico, a 4 de junio de 1999

Panel integrado por su Presidente, el Juez Arbona Lago
y los Jueces Brau Ramírez y Urgell Cuebas

Brau Ramírez, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

**I**

El confinado José Andújar Román, compareciendo por derecho propio, recurre de una resolución emitida el

25 de enero de 1999 por la parte recurrida, Junta de Libertad Bajo Palabra, denegando al recurrente los beneficios de una libertad bajo palabra.

El recurrente solicitó reconsideración de este dictamen, la que no fue acogida por la agencia.

Mediante resolución emitida el 21 de abril de 1999, concedimos término a la parte recurrida para expresarse en torno al recurso presentado. La recurrida ha comparecido mediante la Oficina del Procurador General.

Por entender que los fundamentos expresados por la Junta en su resolución no están apoyados por el récord administrativo, revocamos la resolución recurrida. Devolvemos el asunto a la agencia para que reevalúe la solicitud del recurrente.

## II

Según se desprende del récord, el 17 de marzo de 1997, el recurrente fue sentenciado por el Tribunal de Primera Instancia a cumplir una pena de seis (6) años de reclusión por una violación al Art. 105 del Código Penal, 33 L.P.R.A. sec. 4067, por actos lascivos e impúdicos cometidos contra su hijastra.

Luego de haber servido parte de su sentencia, el recurrente solicitó el beneficio de una libertad bajo palabra.

Según se desprende del récord, el recurrente es primer ofensor y tiene una educación de segundo año de universidad en contabilidad y gerencia. Está clasificado en custodia mediana debido, aparentemente, a un diagnóstico siquiátrico de una condición bipolar y a su uso anterior de sustancias controladas.

Durante su confinamiento, el recurrente ha mantenido buena conducta, se ha mantenido trabajando en tareas de ebanistería en la prisión, se ha desempeñado como asistente del pastor de la Iglesia Cristiana de la Institución y ha cumplido un régimen de terapias sicológicas, sicoadictivas y de alcoholismo.

Su plan de libertad bajo palabra contempla una oferta de la empresa S.O.S. Technology Group, quien ha expresado interés en emplearlo. El recurrente está casado y procreó una hija de diez años de edad con su esposa. El recurrente mantiene buenas relaciones con su familia. (La hijastra objeto del delito fue removida de su hogar y ya no vive con la esposa del confinado).

La familia del recurrente lo apoya en su solicitud y ha expresado su disposición de recibirlo en su casa.

Según se desprende del récord, la versión del recurrente es que su hijastra, quien es adolescente, estaba activa sexualmente y lo provocó a tocarla. Luego lo delató porque él estaba en desacuerdo a una relación que la joven mantenía con un muchacho. El recurrente expresó su arrepentimiento por haber cometido el delito.

El recurrente fue evaluado en dos ocasiones por oficiales sociopenales. El primer informe, del 29 de junio de 1998, le resultó esencialmente adverso, toda vez que, a juicio del oficial sociopenal, la condición de bipolaridad del recurrente implicaría que éste tiene *"pocos controles"*.

La segunda evaluación del 25 de noviembre de 1998 resultaba más favorable al recurrente, relatando su buena conducta, su cumplimiento del tratamiento ofrecido en prisión, la oferta de empleo y el apoyo de sus familiares, aunque también se menciona su condición de bipolaridad.

La víctima del delito y el padre de ella se opusieron a que se le concediera la libertad bajo palabra al recurrente.

El 25 de enero de 1999, mediante la resolución recurrida, la Junta denegó la solicitud del recurrente. En su breve escrito, la agencia concluyó que el recurrente *"no cuenta con plan de salida estructurado en el área de vivienda. La vivienda propuesta resultó no viable."* También expresó que *"la libertad bajo palabra en su caso es incompatible con el bienestar de sus familiares o con personas con quien usted conviviere."*

El recurrente solicitó reconsideración, insistiendo que tenía una residencia disponible y que su libertad bajo palabra no afectaría a su hijastra porque ésta ya no vivía con su esposa. La Junta no acogió esta moción.

Insatisfecho, el recurrente acudió ante este Tribunal.

## III

En su recurso, el recurrente plantea varios señalamientos dirigidos a cuestionar las determinaciones de hechos de la agencia.

La Ley 118 de 22 de julio de 1974, según enmendada, crea la Junta de Libertad Bajo Palabra y concede a dicho organismo la discreción para decretar la libertad bajo palabra de cualquier persona recluida en las instituciones penales de Puerto Rico. 4 L.P.R.A. sec. 1503; *Toro Ruiz v. Junta de Libertad Bajo Palabra*, ___ D. P.R. ___ (1993), **93 J.T.S. 120**, a la pág. 11,030; *Ortiz v. Alcaide Penitenciaría Estatal*, 131 D.P.R. 849, 858 (1992).

Se trata de un gracia legislativa, no de un derecho, *Emanuelli v. Tribunal de Distrito*, 74 D.P.R. 541, 549 (1953), relacionada a la rehabilitación del confinado, no con la determinación de su culpabilidad. *Lebrón Pérez v. Alcaide, Cárcel de Distrito*, 91 D.P.R. 567, 573-574 (1964).

La persona que lo recibe queda bajo la custodia legal de la Junta y sujeta a su intervención, *Lebrón Pérez v. Alcaide Cárcel de Distrito*, 91 D.P.R. a la pág. 573.

Como cualquier otra agencia, las determinaciones de la Junta están sujetas a las disposiciones de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. secs. 2101 y ss. *Ortiz v. Alcaide Penitenciaría Estatal*, 131 D.P.R. a la pág. 863.

Consecuentemente, dichas determinaciones serán sostenidas en revisión, si están basadas en evidencia sustancial en el récord administrativo. 3 L.P.R.A. sec. 2175; *Misión Industrial de Puerto Rico v. Junta de Calidad Ambiental*, ___ D.P.R. ___ (1998), **98 J.T.S. 77**, a la pág. 1,168; *Associated Insurance Agencies, Inc. v. Comisionados de Seguros de P.R.*, ___ D.P.R. ___ (1997), **97 J.T.S. 142**, a la pág. 332; *Asociación de Doctores en Medicina al Cuidado de la Salud Visual v. Colegio de Optómetras de Puerto Rico*, ___ D.P.R. ___ (1993), **93 J.T.S. 12**, a la pág. 10,349; *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194, 210 (1987).

*"Evidencia sustancial"* para sostener la actuación administrativa es aquella que una mente razonable puede aceptar como adecuada para sostener una conclusión. *Misión Industrial de Puerto Rico v. Junta de Calidad Ambiental*, **98 J.T.S. 77**, a la pág. 1,160; *Associated Insurance Agencies, Inc. v. Comisionados de Seguros de P. R.*, **97 J.T.S. 142**, a las págs. 332-333; *Hilton Hotels International v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953).

Ahora bien, la deferencia debida al foro administrativo no implica una renuncia de la función revisora de los tribunales ante una actuación administrativa incorrecta. Cuando la agencia administrativa ha actuado arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituya un abuso de discreción, su actuación no es válida y debe ser corregida por los tribunales. *Reyes Salcedo v. Policía de Puerto Rico*, ___ D.P.R. ___ (1997),

**97 J.T.S. 58**, a la pág. 959; *Fuertes v. A.R.P.E.,* ___ D.P.R. ___ (1993), **93 J.T.S. 165**, a las págs. 11,385-11,386; *Del Rey v. J.A.C.L.,* 107 D.P.R. 348, 355 (1978).

La decisión administrativa, en este sentido, no puede ser pro forma, sino que tiene que reflejar que el foro administrativo ha considerado y resuelto los conflictos de prueba. Las determinaciones de hechos deben ser lo suficientemente específicas para que los tribunales puedan revisar la decisión administrativa. *Misión Industrial de Puerto Rico v. Junta de Calidad Ambiental,* **98 J.T.S. 77**, a la pág. 1,160; *Associated Insurance Agencies, Inc. v. Comisionados de Seguros de P.R.,* **97 J.T.S. 142**, a la pág. 332.

En el presente caso, hemos examinado los documentos sometidos por las partes y coincidimos con el recurrente en que las determinaciones expresadas por la Junta en su resolución no están sostenidas por el récord.

La Junta determinó que el recurrente no contaba con un plan de salida estructurado en el área de vivienda. Lo cierto es que, según se desprende del récord, el recurrente piensa residir con su esposa y con su hija, con quienes mantiene buenas relaciones y quienes han expresado su disposición de recibirlo en su casa.

La Junta también concluyó que la libertad bajo palabra del recurrente sería incompatible con el bienestar de sus familiares y de las personas con quien el recurrente convivía. No obstante, surge que el recurrente es primer ofensor y que sus relaciones con su esposa e hija son buenas. El recurrente ha demostrado buena conducta en prisión y cuenta con una oferta de empleo. También ha completado los tratamientos requeridos por la Administración durante su confinamiento. En estas circunstancias, no percibimos una base para la conclusión de la agencia de que su libertad sería incompatible con el bienestar de sus familiares.

La política pública adoptada por la Sección 19 del Art. VI de la Constitución de Puerto Rico persigue brindar a los delincuentes tratamiento adecuado para hacer posible su rehabilitación moral y social.

En la situación de autos, no está claro que el récord sostenga las determinaciones de la Junta, invocadas para denegar la libertad bajo palabra al recurrente.

Reconocemos que los informes de los oficiales sociopenales tienden a indicar que la posibilidad de que el recurrente cuente con pocos controles, en vista de su condición de bipolaridad. El récord, en este sentido, es ambiguo. El primer informe, de 29 de junio de 1998, en este sentido, resulta negativo a la solicitud del recurrente, mientras que el informe más reciente, del 25 de noviembre de 1998, parecería adoptar una posición más favorable a su posición.

Toda vez que la agencia no hace referencia a ninguno de estos documentos ni intenta resolver la posible discrepancia entre los mismos y en vista de que las determinaciones de la Junta no están, de otro modo, sostenidas por el récord, resolvemos revocar la resolución recurrida y devolver el asunto a la agencia para que la solicitud de libertad bajo palabra del recurrente sea evaluada nuevamente, descartándose los criterios expresados en la resolución recurrida. La agencia deberá llevar esto a cabo dentro de un término de treinta (30) días.

Por los fundamentos expresados, se expide el auto y se revoca la resolución recurrida. Se devolverá el asunto ante la Junta de Libertad Bajo Palabra para que, dentro del término de treinta (30) días, emita una nueva determinación en torno a la solicitud del recurrente.

Lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.

<div align="right">

Aida Ileana Oquendo Graulau
Secretaria General